REVISED MARCH 17, 2009

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 23, 2009

Charles R. Fulbruge III
Clerk

No. 08-30404

————

THE TORCH LIQUIDATING TRUST, by and through Bridge Associates LLC
as trustee

Plaintiff - Appellant

v.

LYLE STOCKSTILL; LANA J HINGLE STOCKSTILL; ANDREW L MICHEL;
R JERE SHOPF; KEN WALLACE; CURTIS LEMONS; ROBERT E FULTON;
XL SPECIALTY INSURANCE COMPANY

Defendants - Appellees

————

Appeal from the United States District Court
for the Eastern District of Louisiana, New Orleans

————

Before KING, DENNIS, and ELROD, Circuit Judges.

KING, Circuit Judge:

Torch Liquidating Trust, through its trustee Bridge Associates L.L.C.,
brings this suit alleging breach of fiduciary duties by the officers and directors
of Torch Offshore, Inc.; Torch Offshore, L.L.C.; and Torch Express, L.L.C. The
district court dismissed plaintiff's amended complaint under Rule 12(b)(6) of the
Federal Rules of Civil Procedure on the ground that the amended complaint's
allegations of injury to the creditors of Torch Offshore, Inc.; Torch Offshore,
L.L.C.; and Torch Express, L.L.C. failed to state a claim on behalf of Torch

Liquidating Trust and on the ground that Delaware's business judgment rule applied to preclude liability of the officers and directors. We affirm because the amended complaint fails to allege injury to Torch Offshore, Inc.; Torch Offshore, L.L.C.; and Torch Express, L.L.C. and thus fails to state a claim on behalf of the Torch Liquidating Trust.

## I. FACTUAL AND PROCEDURAL BACKGROUND

A.      Factual Background

Torch Offshore, Inc.; Torch Offshore, L.L.C.; and Torch Express, L.L.C. (collectively, "Torch" or "debtor") operated a fleet of specialized vessels used in offshore underwater construction and in laying submerged oil and gas pipelines. Although Torch historically operated on the Gulf of Mexico's outer continental shelf, a slump in offshore oil and gas facility development led Torch to undertake deep-water operations in 2002. For this new business model, Torch raised capital by completing an initial public offering and borrowing additional sums of money from creditors to upgrade its fleet with new or overhauled vessels—including the MIDNIGHT RIDER, MIDNIGHT EXPRESS, and MIDNIGHT WRANGLER.

Starting in 2003, Torch's business deteriorated. By the end of 2003, it may have been insolvent, although it continued to incur trade debt. By December 2004, its loans were in default, leading the company to stop paying its vendors. On January 7, 2005, it filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Eastern District of Louisiana. The bankruptcy court confirmed Torch's proposed First Amended Joint Chapter 11 Plan of Reorganization (the "Plan") on April 28, 2006. Pursuant to the Plan, debtor executed an agreement creating the Torch Liquidating Trust (the "Trust"). The Trust was comprised of "all property of the Debtors' Estates which has not

previously been transferred." The confirmation order and trust agreement appointed Bridge Associates L.L.C. ("Bridge Associates") as the Trust's administrator and trustee. The Plan, confirmation order, and trust agreement preserved and transferred, inter alia, certain claims against Torch's directors and officers ("D&O claims") to the Trust, authorized Bridge Associates to retain and prosecute those claims, and empowered it to distribute to creditors any recovery of claims proceeds.[1] The Plan defined D&O claims as "any claims arising prior to January 7, 2005 [the date Torch filed its chapter 11 petition] and recoveries against the Debtors' directors, officers, and other principals which are

---

[1] The Plan granted Bridge Associates the right, power, and duty to, inter alia, "prosecute any D&O Claims and distribute the proceeds of such Claims." First Amended Joint Chapter 11 Plan of Reorganization for Torch Offshore, Inc., Torch Offshore, L.L.C. and Torch Express, L.L.C. at 41, In re Torch Offshore, Inc., Nos. 05-10137, 05-10138 & 05-10140 (Bankr. E.D. La. Feb. 9, 2006). It also stated that:

> Debtors hereby preserve any and all Causes of Action they may have including . . . D&O Claims. Upon the Effective Date, all . . . D&O Claims shall, pursuant to (i) Bankruptcy Code Section 1123(b)(3)(B), (ii) this Plan and (iii) the Confirmation Order, be retained by the Plan Administrator and Trustee as the duly appointed representative of the Estates. Subject to the provisions of this Plan, the Plan Administrator and Trustee may prosecute, settle, or dismiss any and all Causes of Action . . . as the Plan Administrator and Trustee sees fit without Bankruptcy Court approval.

Id. at 46. The bankruptcy court's confirmation order reiterated substantially the same content. See In re Torch Offshore, Inc., Nos. 05-10137, 05-10138 & 05-10140, slip op. at *13 (Bankr. E.D. La. Apr. 28, 2006) (order confirming the Plan). The trust agreement likewise authorized trustee action:

> The Plan Administrator and Trustee shall be empowered to and . . . may, [sic] take all appropriate action with respect to the Liquidating Trust Assets consistent with the purpose of the Liquidating Trust, including, without limitation, the filing, prosecution (including objections), estimation, settlement or other resolution of . . . D&O Claims . . . and oversee the management of any Liquidating Trust Assets. The Plan Administrator and Trustee is expressly authorized to settle and compromise . . . the D&O Claims without further Bankruptcy Court approval . . . .

Liquidating Trust Agreement at 6, In re Torch Offshore, Inc., Nos. 05-10137, 05-10138 & 05-10140 (Bankr. E.D. La. May 2006).

related to the Debtors' D&O insurance." The parties do not dispute that the breach of fiduciary duty claims at issue on appeal are D&O claims.

B.    Procedural Background

On January 5, 2007, Bridge Associates filed a complaint on behalf of the Trust against Torch's former directors and officers (the "Directors").[2] The complaint alleged that the Directors breached fiduciary duties owed to Torch's creditors when Torch entered the zone of insolvency and after it became insolvent. Defendants moved to dismiss the complaint or for a more definite statement. They sought the latter in part because the complaint appeared to allege fraud, which under Rule 9(b) of the Federal Rules of Civil Procedure requires plaintiff to state with particularity the circumstances constituting fraud. After Bridge Associates clarified that it was not alleging fraud but instead only breach of fiduciary duties,[3] the court denied defendants' motion.

In the intervening period, the Delaware Supreme Court issued its opinion in North American Catholic Educational Programming Foundation, Inc. v. Gheewalla, 930 A.2d 92 (Del. 2007). In Gheewalla, the court held that "the creditors of a Delaware corporation that is either insolvent or in the zone of insolvency have no right, as a matter of law, to assert direct claims for breach of fiduciary duty against the corporation's directors." Id. at 94 (emphasis added). The court reasoned that "the general rule is that directors do not owe creditors duties beyond the relevant contractual terms." 930 A.2d at 99 (quotation marks

---

[2] The Directors include: Lyle Stockstill, Lana J. Hingle Stockstill, Andrew L. Michel, R. Jere Shopf, Ken Wallace, Curtis Lemons, and Robert E. Fulton. Other defendants were XL Specialty Insurance Company and Greenwich Insurance Company.

[3] Bridge Associates specifically argued that its complaint did not allege intent or actual motive to deceive.

and footnotes omitted). Gheewalla, thereby, rendered meritless plaintiff's claim that the Directors breached fiduciary duties owed to Torch's creditors. Nonetheless, "the creditors of an insolvent corporation have standing to maintain derivative claims against directors on behalf of the corporation for breaches of fiduciary duties." Id. at 101 (second emphasis added).[4]

In the aftermath of Gheewalla, plaintiff moved for leave to amend its complaint; Defendants opposed the motion on the grounds of futility and undue delay. The district court granted the motion to amend, and plaintiff then filed its amended complaint. In the amended complaint, plaintiff replaced nearly all of its prior references to "creditors" with new references to "creditors and shareholders" and sought damages on behalf of creditors and shareholders. (See, e.g., Am. Compl. ¶ 46 ("[T]he Torch creditors and shareholders have suffered damage in the amount of not less than $35,800,000, and in an amount to be proven at trial, and plaintiff is entitled to recover such damages from the defendants herein on behalf of the Torch creditors and shareholders.").) It also alleged that "[t]his matter is in the nature of a derivative suit in that plaintiff

---

[4] The court reasoned that:

It is well settled that directors owe fiduciary duties to the corporation. When a corporation is solvent, those duties may be enforced by its shareholders, who have standing to bring derivative actions on behalf of the corporation because they are the ultimate beneficiaries of the corporation's growth and increased value. When a corporation is insolvent, however, its creditors take the place of the shareholders as the residual beneficiaries of any increase in value.

Consequently, the creditors of an insolvent corporation have standing to maintain derivative claims against directors on behalf of the corporation for breaches of fiduciary duties.

Id. at 101–02 (quotation marks and footnotes omitted).

sues on behalf of the shareholders and creditors alike of [Torch]." (Id. at ¶ 2(d).)[5] As such, any recovery was to become property of the Trust for distribution according to the Plan. (See id. at ¶ 2(d) ("All net recoveries, if any, shall go to the Trust for distribution in accordance with the Plan, all as ordered by the Court.").)[6]

Substantively, plaintiff alleged that the Directors: (1) "inflat[ed] the estimated fair market value of the [Torch] fleet in order to portray in published financial statements that [it was] solvent," (id. at ¶ 28; see also id. at ¶ 39); (2) "deferr[ed] paying unsecured creditors to the maximum extent possible while at the same time entering into an intensive campaign to mislead Torch's unsecured creditors as to its true financial condition and cajole Torch's unsecured creditors into continuing to supply goods and services to Torch on credit," (id. at ¶ 29); (3) delayed for as long as possible admitting "that Torch would be unable to fund its ongoing operations without new capital," (id. at ¶ 30); (4) postponed admitting that the delayed delivery of the MIDNIGHT EXPRESS "would probably destroy the company," (id. at ¶ 31); and (5) "orchestrated a public relations campaign to obscure and minimize the market impact of the financial data Torch was compelled to release in public reporting," (id. at 31). The Directors' public

---

[5] In an attempt to comply with Rule 23.1 of the Federal Rules of Civil Procedure, plaintiff alleged that it "was neither a shareholder or nor [sic] a creditor of Torch at the time the transactions complained of occurred but represents the interests of the shareholders and creditors of [Torch]"; that "[w]ritten demand was made upon the Directors of Torch by counsel for the Official Committee of Unsecured Creditors of Torch"; and that "[p]laintiff has not made demand upon the Directors nor shareholders of Torch to undertake the prosecution of this action because (i) the Plan and the Confirmation Order have vested the right to bring the action in the plaintiff; (ii) there are no Directors of Torch; (iii) the shareholders can take no action to force the Directors to sue, there being no directors; and (iv) plaintiff is the only legal person who can bring this action." (See Am. Compl. ¶ 2(b), (c)); see also Fed. R. Civ. P. 23.1.

[6] The amended complaint also dropped Greenwich Insurance Company as a defendant.

relations campaign allegedly included interviews and articles that misrepresented Torch's financial condition and the progress on MIDNIGHT EXPRESS in order to "mislead Torch creditors and shareholders and to permit Torch to continue to purchase essential supplies and services on credit." (Id. at ¶¶ 33–36.)

The Directors filed a motion to dismiss under Rule 12(b)(6), asserting that Bridge Associates lacked standing to bring the suit, that Delaware's business judgment rule applied to preclude the Directors' liability, and that exculpatory provisions in Torch's certificate of incorporation shielded the Directors from liability for certain alleged breaches of their fiduciary duties.

The district court granted the motion, holding that plaintiff lacked standing to assert many of its claims, which the district court interpreted as continuing to allege direct creditor claims barred by Gheewalla, and, to the extent any of the claims were properly derivative, that Delaware's business judgment rule defeated those claims. The district court concluded that plaintiff failed to state a claim that it had standing to bring because "the Amended Complaint . . . does not allege that the creditors are bringing the derivative action on behalf of the corporation, but rather states that the Trust is 'entitled to recover damages from the defendants herein on behalf of the Torch creditors and shareholders.'" Torch Liquidating Trust ex rel. Bridge Assocs., L.L.C. v. Stockstill, No. 07-133, 2008 WL 696233, at *5 (E.D. La. Mar. 13, 2008). The court determined that "[t]he Gheewalla court was specific in its findings that such direct claims as these by creditors are not actionable," id. at *5, and held that:

> Plaintiff's arguments and its Amended Complaint blur[] the distinction made by the Gheewalla court between creditors and

shareholders. The creditors, and therefore the Trust on its behalf, do have standing to assert any derivative claim on behalf of the corporation. However, neither the creditors nor the Trust have standing to assert the claims raised in the Amended Complaint that allege direct breach of fiduciary duty claims by the directors owed to the creditors. Such direct claims do not exist under the current state of Delaware law.

Accordingly, the Court finds that the Amended Complaint fails to state a cause of action by the creditors for breaches of fiduciary duties during Torch's zone of insolvency or when Torch was in fact insolvent and[,] therefore, the Trust cannot raise such claims against the directors on behalf of the creditors.

Id. at *6–7 (footnotes omitted).

The district court simultaneously concluded that both shareholders' and creditors' claims were "subject to dismissal under Delaware's business judgment rule." Id. at *7, 10–11. Plaintiff raised numerous points in opposition to the applicability of the business judgment rule, including that (1) court review would be inappropriate in a motion to dismiss, (2) defendants fail to demonstrate the requisite board action, (3) the rule does not protect the Directors from their intentional misrepresentations, (4) a different standard applies when a fiduciary duty is owed to the creditor during insolvency or in the zone of insolvency, and (5) the rule is inapplicable to situations evidencing bad faith or self-dealing. The district court rejected each of these arguments. Id. at *7–10. Thus, the court held that the creditors did not have a direct cause of action for breach of fiduciary duties against the Directors, alleged an improper derivative suit on behalf of the creditors, and did not state a claim that falls outside of the business judgment rule. Id. at *11. Consequentially, it granted the motion, dismissed the suit with prejudice, and entered a final judgment for the Directors.

8

Bridge Associates timely filed a notice of appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II. DISCUSSION

We review de novo the district court's order granting a motion to dismiss for failure to state a claim under Rule 12(b)(6). See Vanderbrook v. Unitrin Preferred Ins. Co. (In re Katrina Canal Breaches Litig.), 495 F.3d 191, 205 (5th Cir. 2007). We may affirm dismissal on any basis supported by the Rule 12(b)(6) record. See R2 Invs. LDC v. Phillips, 401 F.3d 638, 642 (5th Cir. 2005). When considering a Rule 12(b)(6) motion, we "accept[] all well-pleaded facts [of the complaint] as true, viewing them in the light most favorable to the plaintiff." In re Katrina Canal Breaches Litig., 495 F.3d at 205 (quotation marks and citation omitted). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965 (quotation marks, citations, and footnote omitted). To raise a right to relief, the complaint must contain either direct allegations or permit properly drawn inferences to support "every material point necessary to sustain a recovery"; thus, "[d]ismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." Campbell v. City of San Antonio, 43 F.3d 973, 975 (5th Cir. 1995) (quotation marks and citations omitted).

In this case, the parties contest Bridge Associates's standing to bring a derivative suit on behalf of creditors or shareholders. In so doing, they misconstrue the nature of Bridge Associates's standing to assert the claims. As

the trustee, Bridge Associates may bring D&O claims that were part of debtor's estate on behalf of the Trust; it need not allege a derivative suit based on either shareholder or creditor derivative standing. Although plaintiff has standing, it fails to state a claim for which the court may grant relief. It argues that it is attempting to assert a breach of fiduciary duties owed to Torch but fails to allege necessary elements of such a claim—specifically, but not limited to, injury to Torch. As the district court recognized, when plaintiff amended its complaint, it failed to allege a claim on behalf of Torch and continued to maintain what appear to be impermissible direct claims on behalf of creditors, now clothed in the unnecessary pleadings of a derivative action (ostensibly, but never expressly, on behalf of Torch). The district court therefore did not abuse its discretion in denying plaintiff an opportunity to amend.

A.    Standing

The Trust, through its trustee Bridge Associates, attempts to allege—in the form of a shareholder and creditor derivative suit—that the Directors breached their fiduciary duties. This ill-conceived pleading posture distracts from Bridge Associates's standing as trustee to bring a direct suit on the Trust's behalf for Torch's claims against the Directors.

Under Delaware law,[7] a claim alleging the directors' or officers' breach of fiduciary duties owed to a corporation may be brought by the corporation or through a shareholder derivative suit when the corporation is solvent or a creditor derivative suit when the corporation is insolvent. See Gheewalla, 930 A.2d at 101–02. A derivative suit "enables a stockholder to bring suit on behalf of the corporation for harm done to the corporation." Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031, 1036 (Del. 2004). "The derivative action developed in equity to enable shareholders to sue in the corporation's name where those in control of the company refused to assert a claim belonging to it." Aronson v. Lewis, 473 A.2d 805, 811 (Del. 1984), partially overruled on other grounds by Brehm v. Eisner, 746 A.2d 244 (Del. 2000). "The nature of the action is two-fold. First, it is the equivalent of a suit by the shareholders to compel the corporation to sue. Second, it is a suit by the corporation, asserted by the shareholders on its behalf, against those liable to it." Aronson, 473 A.2d at 811. Shareholders have standing to enforce claims on behalf of a solvent corporation through a derivative suit "because they are the ultimate beneficiaries of the corporation's growth and increased value." Gheewalla, 930 A.2d at 101. If a corporation becomes insolvent, however, its creditors become the appropriate

---

[7] The parties apply Delaware's substantive law to this case. We agree that Delaware law controls. In a diversity action, a federal court must apply the choice of law rules of the state in which the district court where the complaint was filed sits. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). This case was filed in the Eastern District of Louisiana, so Louisiana choice of law rules apply. Under Louisiana law, the law of the place where the corporation was incorporated governs disputes regarding the relationship between the officers, directors, and shareholders and the officers' and directors' fiduciary duties. See Patin v. Thoroughbred Power Boats Inc., 294 F.3d 640, 646–47 (5th Cir. 2002); Lone Star Indus., Inc. v. Redwine, 757 F.2d 1544, 1548 n.3 (5th Cir. 1985); Mansfield Hardwood Lumber Co. v. Johnson, 268 F.2d 317, 320 (5th Cir. 1959). Because Torch was incorporated in Delaware, Delaware substantive law applies.

parties to bring a derivative suit on behalf of the corporation where those in control of it refuse to assert a viable claim belonging to it because the creditors are the beneficiaries of any increase in value. See id. ("When a corporation is insolvent, however, its creditors take the place of the shareholders as the residual beneficiaries of any increase in value. . . . Consequently, the creditors of an insolvent corporation have standing to maintain derivative claims against directors on behalf of the corporation for breaches of fiduciary duties.").[8] Whether brought by shareholders or creditors, "a derivative suit is being brought on behalf of the corporation, [so] the recovery, if any, must go to the corporation." Tooley, 845 A.2d at 1036.

Having reviewed Delaware's law on derivative suits, we now turn to consider the impact of a chapter 11 filing and plan confirmation on the standing of various parties to bring a suit on behalf of the debtor corporation and its bankruptcy estate. The filing of a chapter 11 petition creates an estate comprised of all the debtor's property, including "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C.

---

[8] Notably, the fiduciaries never owe duties to the creditors:

Recognizing that directors of an insolvent corporation owe direct fiduciary duties to creditors[] would create uncertainty for directors who have a fiduciary duty to exercise their business judgment in the best interest of the insolvent corporation. To recognize a new right for creditors to bring direct fiduciary claims against those directors would create a conflict between those directors' duty to maximize the value of the insolvent corporation for the benefit of all those having an interest in it, and the newly recognized direct fiduciary duty to individual creditors. Directors of insolvent corporations must retain the freedom to engage in vigorous, good faith negotiations with individual creditors for the benefit of the corporation. Accordingly, we hold that individual creditors of an insolvent corporation have no right to assert direct claims for breach of fiduciary duty against corporate directors.

Gheewalla, 930 A.2d at 103 (footnote omitted). The issue, then, is which party has standing to bring claims on behalf of the corporation for duties owed to the corporation.

§ 541(a)(1). We interpret "all legal or equitable interests" broadly: The estate includes causes of action belonging to the debtor. See S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc. (In re S.I. Acquisition, Inc.), 817 F.2d 1142, 1149 (5th Cir. 1987); Am. Nat'l Bank v. MortgageAmerica Corp. (In re MortgageAmerica Corp.), 714 F.2d 1266, 1274 (5th Cir. 1983). By definition then, a cause of action for breach of fiduciary duty owed to the corporation that is property of the corporation at commencement of the chapter 11 case becomes property of the debtor's estate, regardless of whether outside of bankruptcy the case was more likely to be brought by the corporation directly or by a shareholder or creditor through a derivative suit. See Meyer v. Fleming, 327 U.S. 161, 167 (1946) ("The claim sought to be enforced in a derivative suit may be an important asset of the estate."); La. World Exposition v. Fed. Ins. Co., 858 F.2d 233, 245 (5th Cir. 1988) (holding that a corporation's "cause of action against its officers and directors . . . is 'property of the estate'"); Mixon v. Anderson (In re Ozark Rest. Equip. Co.), 816 F.2d 1222, 1225 (8th Cir. 1987) (concluding that breach of fiduciary duty is an example of a "cause[] of action belonging to the debtor at the commencement of the case [that is] included within the definition of property of the estate"); Delgado Oil Co. v. Torres, 785 F.2d 857, 861 n.11 (10th Cir. 1986) ("Plaintiff's suit is akin to a shareholder's derivative action which, upon the filing of a petition in bankruptcy, is property of the estate."); Mitchell Excavators, Inc. v. Mitchell, 734 F.2d 129, 131 (2d Cir. 1984) (holding that the right to prosecute an action against a corporation's

officers and directors "pass[es] to the estate created by the commencement of the bankruptcy proceeding").[9]

A chapter 11 plan of reorganization or liquidation then settles the estate's causes of action or retains those causes of action for enforcement by the debtor, the trustee, or a representative of the estate appointed for the purpose of enforcing the retained claims. See 11 U.S.C. § 1123(b)(3) ("[A] plan may . . . provide for . . . (A) the settlement or adjustment of any claim or interest belonging to the debtor or to the estate; or (B) the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest[.]"). To achieve the plan's goals, the retained assets of the estate may be transferred to a liquidating trust. See 11 U.S.C. § 1123(a)(5)(B) ("[A] plan shall . . . provide adequate means for the plan's

---

[9] After the commencement of a chapter 11 case and before the confirmation of a chapter 11 plan, it is clear beyond peradventure that a debtor in possession or trustee "has the authority to bring an action for damages on behalf of a debtor corporation against corporate principals for . . . breach of fiduciary duty where such an action could have been asserted by the debtor corporation, or by its stockholders in a derivative action, prior to bankruptcy." La. World Exposition, 858 F.2d at 246 (citing, e.g., Caplin v. Marine Midland Grace Trust Co., 406 U.S. 416, 428–29 (1972); Pepper v. Litton, 308 U.S. 295, 307 (1939)); see 11 U.S.C. §§ 323, 1106–07; see also In re Ozark Rest. Equip. Co., 816 F.2d at 1225 (holding that provisions of the Bankruptcy Code "give the trustee authority to bring an action for damages on behalf of a debtor corporation against corporate principals for alleged . . . breach of fiduciary duty, because these claims could have been asserted by the debtor corporation, or by its stockholders in a derivative action"); Pierson & Gaylen v. Creel & Atwood (In re Consol. Bancshares, Inc.), 785 F.2d 1249, 1253–54 (5th Cir. 1986) (holding that a shareholder derivative suit lacked merit because the trustee was the proper party to bring the action on behalf of the debtor corporation); Mitchell Excavators, 734 F.2d at 131 ("[W]hile normally the fiduciary obligation of officers, directors and shareholders is enforceable directly by the corporation or through a stockholder's derivative action, it is, in the event of bankruptcy of the corporation, enforceable by the trustee." (citation and quotation marks omitted)); In re MortgageAmerica Corp., 714 F.2d at 1276 ("Despite the fact that [an action against a corporation's officers and directors] under normal circumstances is frequently not brought by the corporation itself, the courts have uniformly held that, upon bankruptcy, it passes to the trustee, who is then charged with prosecuting it for the benefit of all creditors and shareholders.").

implementation, such as . . . transfer of all or any part of the property of the estate to one or more entities, whether organized before or after the confirmation of such plan."). Section 1123 therefore allows a plan to transfer to a trustee of a liquidating trust the authority to enforce an estate's claims for breach of fiduciary duties owed to the corporation and to distribute the proceeds of successful suits. See McFarland v. Leyh (In re Tex. Gen. Petroleum Corp.), 52 F.3d 1330, 1335 (5th Cir. 1995) ("Section 1123(b)(3)(B) allows a plan to transfer avoidance powers to a party other than the debtor or the trustee."); 7 COLLIER, COLLIER ON BANKRUPTCY ¶ 1123.02[3][a] (15th ed. rev. 2008) ("Section 1123(b)(3)(B) permits the plan to provide for the retention and enforcement of causes of action that are not settled under the plan, by the debtor, the trustee or a representative of the estate appointed for the purpose of pursuing and enforcing such claims."). To show standing based on the plan's effectuation of such a transfer, the trustee must show: "(1) that it has been appointed, and (2) that it is a representative of the estate." In re Tex. Gen. Petroleum Corp., 52 F.3d at 1335 (citing, e.g., Retail Marketing Co. v. King (In re Mako, Inc.), 985 F.2d 1052, 1054 (10th Cir. 1993)). The bankruptcy court's approval of a plan that clearly appoints an independent trustee to administer the liquidating trust satisfies the first element. Id. Although the courts apply a case-by-case approach to determine the second element, it is generally satisfied if a successful recovery by the trustee would benefit the debtor's unsecured creditors. Id.

In this case, Bridge Associates has standing to bring a suit on behalf of the Trust for the amended complaint's allegations that the Directors breached the fiduciary duties that they owed to Torch. When Torch filed its chapter 11 petition, all claims owned by it, including claims against the Directors for breach

of fiduciary duties, became part of the estate. In turn, the Plan, as confirmed by the bankruptcy court, transferred all of the debtor estate's remaining assets to the Trust. As part of that transfer, the Plan and the court's order expressly preserved and transferred all D&O claims. To administer the estate and the Trust, the Plan provided for the appointment of a Plan Administrator and Trustee, which was granted the "rights and powers of a debtor-in-possession under Section 1107 of the Bankruptcy Code,"[10] including the duty "to prosecute any D&O Claims and distribute the proceeds of such claims," and other rights and powers set forth in the Liquidating Trust Agreement. The court's confirmation order and the trust agreement named Bridge Associates as the administrator and trustee of the Trust. Under the Plan, the court's confirmation order, and the trust agreement, Bridge Associates was to distribute proceeds of the Trust's assets according to the Plan, which allocated the proceeds of D&O claims to debtor's unsecured creditors by pro rata share. Pursuant to section 1123, therefore, Bridge Associates has standing to bring D&O claims on behalf of the Trust for injuries to Torch.[11]

---

[10] As noted earlier, section 1107 grants a debtor in possession standing to prosecute the estate's causes of action, so this provision further evinces the Plan's design to allow Bridge Associates to prosecute this cause of action.

[11] The district court may have concluded, without discussion, that Bridge Associates, as trustee of the Trust, had standing to bring permissible derivative claims on behalf of creditors and shareholders. We wish to identify two problems with this conclusion. First, the Plan transferred Torch's D&O claims to the Trust. The parties have not pointed us to any assignment of claims to the Trust by creditors or shareholders (assuming, without deciding, that they own any such claim and that such an assignment would be permissible); thus, Bridge Associates has standing to bring D&O claims on the Trust's behalf but does not have standing to bring such claims on the shareholders' or creditors' behalf. Despite Bridge Associates's allegations that it has standing to "sue on behalf of the shareholders and creditors alike," (Am. Compl. ¶ 2(d)), the validity of that assertion is not clear in either law or fact.

Second, this case is not a derivative suit. The Trust, through Bridge Associates, is the

B. Merits

Even excusing the amended complaint's confusing construction of plaintiff's standing, however, dismissal pursuant to Rule 12(b)(6) was still appropriate because plaintiff fails to allege a cause of action on behalf of Torch for breach of the Directors' fiduciary duties. Under Delaware law, "[d]irectors owe their fiduciary obligations to the corporation and its shareholders." Gheewalla, 930 A.2d at 99 (citing Malone v. Brincat, 722 A.2d 5, 10 (Del. 1998); Guth v. Loft, 5 A.2d 503, 510 (Del. 1939)). "When the directors are not seeking shareholder action, but are deliberately misinforming shareholders about the business of the corporation, either directly or by a public statement, there is a violation of fiduciary duty." Malone, 722 A.2d at 14.[12] The amended complaint

---

plaintiff—neither a shareholder nor a creditor is the plaintiff. Moreover, the Trust is willingly bringing the suit; thus, there is no need or authority for a derivative action. Cf. La. World Exposition, 858 F.2d at 247 (permitting a derivative action in bankruptcy only where the bankruptcy court concludes "that the claim [is] colorable, that the debtor-in-possession ha[s] refused unjustifiably to pursue the claim, and that the committee first receive[s] leave to sue from the bankruptcy court"); In re Consol. Bancshares, 785 F.2d at 1254 (same); accord Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery, 330 F.3d 548, 572, 579 (3d Cir. 2003) (en banc); Commodore Int'l Ltd. v. Gould (In re Commodore Int'l Ltd.), 262 F.3d 96, 100 (2d Cir. 2001); Liberty Mut. Ins. Co. v. Official Unsecured Creditors' Comm. of Spaulding Composites Co. (In re Spaulding Composites Co.), 207 B.R. 899, 903 (B.A.P. 9th Cir. 1997); Mitchell Excavators, 734 F.2d at 131–32.

The parties' dispute regarding Bridge Associates's standing to bring a derivative suit is simply not relevant to its standing to bring a suit on behalf of debtor's estate, and we will, therefore, ignore the amended complaint's excess allegations regarding derivative standing. We rely instead on those allegations and supporting documents that provide it with standing. (See Am. Compl. ¶ 2(c) ("[T]he Plan and the Confirmation Order have vested the right to bring the action in the plaintiff," and the "plaintiff is the only legal person who can bring this action.").)

[12] The corporation and its directors must also comport with the obligations imposed by federal statutes and the regulations promulgated by the United States Securities and Exchange Commission. See 15 U.S.C. § 78j; 17 C.F.R. § 240.10b-5; see also, e.g., Santa Fe Indus., Inc. v. Green, 430 U.S. 462, 474–80 (1977); Ernst & Ernst v. Hochfelder, 425 U.S. 185, 194–197 (1976); Affiliated Ute Citizens v. United States, 406 U.S. 128, 152–54 (1972);

alleges this type of breach. The elements of a claim for misrepresentation of a corporation's financial condition where no shareholder action is requested are: (1) deliberate misinformation either directly or through public statement; (2) reliance; (3) causation; and (4) actual, quantifiable damages. See id. at 12, 14 (comparing an action for breach of fiduciary duty "[w]hen the directors are not seeking shareholder action, but are deliberately misinforming shareholders about the business of the corporation" with "[a]n action for a breach of fiduciary duty arising out of disclosure violations in connection with a request for stockholder action[,which] does not include the elements of reliance, causation and actual quantifiable monetary damages" (emphasis added)); Metro Commc'n Corp. v. Advanced Mobilecomm Techs. Inc., 854 A.2d 121, 157 (Del. Ch. 2004) ("In the Malone context, a plaintiff had to prove that the directors 'knowingly disseminate[d] false information.' This level of proof is similar to, but even more stringent than, the level of scienter required for common law fraud." (alternation in original)); A.R. DeMarco Enters., Inc. v. Ocean Spray Cranberries, Inc., No. Civ. A. 19133-NC, 2002 WL 31820970, at *4 n.10 (Del. Ch. Dec. 4, 2002) ("When shareholder action is absent, plaintiff must show reliance, causation, and damages."); O'Reilly v. Transworld Healthcare, Inc., 745 A.2d 902, 917, 920 (Del. Ch. 1999) (holding that, for "a disclosure claim arising out of a communication that does not contemplate stockholder action and which implicates the broader duties of loyalty, 'good faith' and care," the plaintiff must plead "causation and identify actual quantifiable damages"). While we have some difficulty

---

Superintendent of Ins. v. Bankers Life & Cas. Co., 404 U.S. 6, 9–14 (1971); Malone, 722 A.2d at 12–14. In this case, plaintiff has not raised or argued any claims based on the Director's violations of federal law.

conceptualizing such a claim on behalf of a corporation,[13] any such claim necessarily requires the pleading of damages and causation.

The amended complaint fails to meet this burden. It alleges no actual, quantifiable damages suffered by Torch. It alleges only that the creditors and shareholders were misled and harmed. (See Am. Compl. ¶ 27 (alleging that the Directors' breach "damaged the creditors and shareholders"); id. at ¶ 28 (alleging that the Directors' breach aimed to "cajole Torch's unsecured creditors into continuing to supply goods and services to Torch on credit and the shareholders to hold their stock interests"); id. at ¶ 45 ("The damages suffered by the Torch creditors and shareholders as alleged herein are covered by the D&O Insurers . . . ."); id. at ¶ 46 ("[T]he Torch creditors and shareholders have suffered damage in the amount of not less than $35,800,000, and in an amount to be proven at trial, and plaintiff is entitled to recover such damages from the defendants herein on behalf of the Torch creditors and shareholders.").)[14] When asked

[13] The context of the claim as specified in Malone is a lack of shareholder action. Typically, such a claim would be brought by shareholders for some action that the shareholders took or forewent when relying on an alleged misstatement. See Malone, 722 A.2d at 14 (cross-referencing a cause of action for damages under an equitable fraud theory as announced in Zirn v. VLI Corp., 681 A.2d 1050, 1060–61 (Del. 1996)). Although the Malone court expressly stated that a shareholder could maintain such an action as "a derivative claim on behalf of the corporation," see id. at 14 (emphasis added), it did not amplify that statement, and subsequent Delaware cases have not clarified how such a claim could be stated on behalf of a corporation. Here, we need not examine all possible variables related to a corporation's claim because, at minimum, plaintiff must show injury to Torch and causation. As discussed in the text, plaintiff fails to do so.

[14] We also note that only two allegations of misinformation are made in the amended complaint. (See Am. Compl. ¶ 28 (falsely "inflating the estimated fair market value of [Torch's] fleet"); id. at ¶¶ 32–37 (conducting a "public relations campaign to obscure and minimize the market impact of the financial data Torch was compelled to release in public reporting"). Many of the allegations to which plaintiff directs us assert failures to disclose that are not actionable under Malone without a corresponding request for shareholder action. (See Am. Compl. ¶ 30 (alleging that the Directors delayed "for as long as possible" admitting that Torch would be

during oral argument to identify any specific pleading permitting an inference of injury to Torch, plaintiff could identify none. We conclude that the amended complaint thus fails to state a claim for breach of the fiduciary duties that the Directors owed to Torch. Reaching this conclusion, we refrain from wading into the parties' contentions regarding the district court's other bases for dismissal.

C.     Remand to Amend

Plaintiff asks us to remand to allow it to amend its amended complaint to allege injury to Torch. Typically, we review the district court's decision not to grant leave to amend for abuse of discretion. Ellis v. Liberty Life Assurance Co., 394 F.3d 262, 268 (5th Cir. 2004). Yet, at no point did plaintiff move the district court for leave to amend its amended complaint to allege a claim showing injury to Torch.[15] Even assuming that plaintiff has properly raised and preserved the issue, we conclude that it is not entitled to relief.

Rule 15 of the Federal Rules of Civil Procedure states that a court "should freely give [leave to amend] when justice so requires." "Although Rule 15 evinces a bias in favor of granting leave to amend, it is not automatic." Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.), 88 F.3d 311, 314 (5th Cir.

---

unable to fund its ongoing operations without new capital); id. at ¶ 31 (alleging that the Directors postponed admitting that the delayed delivery of the MIDNIGHT EXPRESS "would probably destroy the company"); see also Appellant's Br. 26 ("Through the Defendants' non-disclosures they ran up huge debts which destroyed Torch and breached their fiduciary duty to 'maximize the corporation's long-term wealth creating capacity.'" (citation omitted)).) And, at least one allegation continues to assert a claim for breach of fiduciary duties (by Torch, not the Directors) owed to the creditors, a claim that is no longer viable after Gheewalla. (See Am. Compl. ¶ 29 ("Torch breached its duty of candor in its dealings with Torch's creditors.").)

[15] We recognize that plaintiff's briefing to the district court opposing defendants' motion to dismiss requested an opportunity to amend the amended complaint on the issues of self-dealing and bad faith and that the district court's opinion mentions and rejects these requests. See Torch Liquidating Trust, 2008 WL 696233, at *8, 9.

1996) (quotation marks and citation omitted). Under Rule 15, the courts consider such equitable factors as "(1) undue delay; (2) bad faith; (3) dilatory motive on the part of the movant; (4) repeated failure to cure deficiencies by any previously allowed amendment; (5) undue prejudice to the opposing party; and (6) futility of amendment." Ellis, 394 F.3d at 268.

We conclude that justice does not require allowing plaintiff additional opportunity to amend. Plaintiff had ample opportunity to cure the noted defects when it amended its complaint in the aftermath of Gheewalla and in its arguments to the district court. See St. Germain v. Howard, No. 08-30364, 2009 WL 117944, at *2 (5th Cir. 2009) (affirming denial of a motion for leave to amend where "[a]ppellants had several opportunities to state their best case" (citing Price v. Pinnacle Brands, Inc., 138 F.3d 602, 607–08 (5th Cir. 1998) (affirming denial of a motion for leave to amend where the plaintiffs, represented by counsel, "had three opportunities to articulate their damage theory")). Over defendants' opposition, the district court granted plaintiff's prior motion to amend its complaint. In its amended complaint, plaintiff still fails to allege injury to Torch, even though it expressly converted the direct claims of the creditors to derivative claims (which, it bears repeating, could only have been on behalf of Torch).

The way in which plaintiff amended its original complaint also lends support to our conclusion. Plaintiff substituted "creditors" with "creditors and shareholders," labeled its previously direct claim "derivative," and asserted the same substantive facts without determining whether those facts supported a claim on behalf of Torch. This pleading practice demonstrated a complete disregard for its burden to allege facts that state a claim under existing law. Nor

21

is it an appropriate answer for plaintiff to suggest that Gheewalla changed the applicable law. Even before Gheewalla, the Delaware Supreme Court in Malone identified the necessary elements to state a claim for deliberate misinformation when the directors are not seeking shareholder action. That plaintiff was responding in one way to new Delaware case law does not forgive its burden to research and plead the necessary elements of the claim it attempts to bring in its amended complaint.

To cure the present deficiency, plaintiff informed the court during oral argument that it could "easily amend" paragraph 46 of the complaint "to delete the reference to creditors and shareholders to say Torch has suffered damages in the amount" of not less than $35,800,000—another "find and replace" exercise. In light of its prior substitution of "creditors and shareholders" for "creditors," we are not inclined to oblige a simple substitution now without better explanation regarding how the amendment would allow the twice-amended complaint to sustain plaintiff's burden of alleging a complete, properly pleaded, and plausible claim. Lacking a viable theory to support its claim of injury,[16]

---

[16] In plaintiff's most cogent statement during oral argument, it asserted that Torch would have been better off had it gone into bankruptcy earlier, been relieved of the debt accompanying the MIDNIGHT EXPRESS, and restructured sooner. Delaware does not recognize a cause of action for "deepening insolvency." See Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P., 906 A.2d 168, 174 (Del. Ch. 2006) ("Delaware law does not recognize this catchy term[—deepening insolvency—]as a cause of action, because catchy though the term may be, it does not express a coherent concept."); accord Wooley v. Faulkner (In re SI Restructuring, Inc.), 532 F.3d 355, 364 (5th Cir. 2008). Moreover, Delaware law places the decision to enter bankruptcy within the discretion of the corporation's directors and officers. See Trenwick Am. Litig. Trust, 906 A.2d at 204 ("Delaware law imposes no absolute obligation on the board of a company that is unable to pay its bills to cease operations and to liquidate. Even when the company is insolvent, the board may pursue, in good faith, strategies to maximize the value of the firm."). Delaware law may, however, permit recovery for damages for a failure to cease operations if another theory of liability gives rise to a cause of action. See Trenwick Am. Litig. Trust, 906 A.2d at 174 ("Existing equitable causes of action for breach of

plaintiff asserts that discovery would entail finding out "What would have happened?" had the Directors made their disclosures earlier. This sounds like a request to discover a claim. The role of discovery, however, is to find support for properly pleaded claims, not to find the claims themselves. Cf. Brown v. Texas A & M Univ., 804 F.2d 327, 334 (5th Cir. 1986) (refusing to allow the plaintiffs to "continue to amend or supplement their pleadings until they stumble upon a formula that carries them over the threshold" of an immunity defense (quoting Jacquez v. Procunier, 801 F.2d 789, 792 (5th Cir. 1986))). By our view, plaintiff is not attempting to recover for injury to Torch but instead attempting yet again to repackage creditor claims against the Directors that are defunct under Delaware law after Gheewalla. Under these circumstances, we are not inclined to allow plaintiff to continue.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the decision of the district court. Costs shall be borne by plaintiff.

---

fiduciary duty . . . are the appropriate means by which to challenge the actions of boards of insolvent corporations."). If such damages may theoretically result from a claim of breach of fiduciary duty, they are not viable in this case. Even with the proposed amendment, plaintiff cannot sustain a claim alleging injury to Torch because of Directors' purported misrepresentations of Torch's financial condition. The harm to Torch, if any, occurred when it increased its trade debt, not when the Directors stated to Torch's creditors and shareholders that the "worst is over" or that "signs of a solid quarter are apparent." (See Am. Compl. ¶¶ 34, 35.)