**HORIZON SHIPBUILDING, INC., Travis R. Short, and Ben Forrest, Appellants,**

v.

**BLYN II HOLDING, LLC, Appellee.**

No. 14–09–00852–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 7, 2010.

---

Christopher David Bertini, George W. Vie III, Galveston, for appellants.

David Stephen Toy, Houston, for appellee.

Panel consists of Justices BROWN, SULLIVAN, and CHRISTOPHER.

## OPINION

TRACY CHRISTOPHER, Justice.

In this interlocutory appeal, appellants, Horizon Shipbuilding, Inc. ("Horizon"), Travis R. Short, and Ben Forrest, challenge the trial court's denial of their special appearance. Concluding the Texas court has personal jurisdiction over appellants, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from a dispute between a Texas corporation and an Alabama corporation and its principals. Appellee, BLyn II Holding, LLC ("BLyn") is a Texas Corporation. Horizon is an Alabama corporation. Short, the president and general manager of Horizon, resides in Mississippi. Forrest, a project manager for Horizon and director of operations for Crimson, an unincorporated division of Horizon, resides in Alabama. The dispute involves a motor yacht, the *MY Betty Lyn II*, which BLyn had purchased to refurbish and refit as a charter vessel. The yacht was moored in Galveston County.

In April 2006, Horizon, acting through Short and Forrest, represented to BLyn that Horizon could refurbish and outfit the yacht for an estimated but set price. BLyn paid to have the yacht hauled to Alabama, and Horizon received the yacht at its Alabama shipyard in June 2006. On August 1, 2006, Horizon, acting through Crimson, executed a time and materials contract with BLyn for Horizon to perform the work on the yacht in Alabama. The

contract also purportedly contained an Alabama choice-of-law provision.[1]

In late September 2006, James McCord, a member of BLyn, sent an email to Short and Forrest informing them of an October 5 meeting in Houston "to discuss documentation and financing for the boat, draw schedule for the bank, valuations of the boat as the refit progresses, final plans for the interior and exterior, legal issues, and other topics that may arise during the meeting." Short responded that he and Forrest planned to attend. According to McCord, at the October 5 meeting, they "[s]pecifically discussed ... a budget for refinishing the vessel of approximately $4,500,000 to be paid to Horizon for its employees' labor and materials on the project."

Short and Forrest again met with McCord in Houston on March 4, 2008. At this meeting, Short presented an estimated completion cost of over $9,000,000. On March 17, Short wrote to McCord attributing the extended duration of the project to initial delays, owner-furnished drawings, and change orders. Short offered to reduce the completion costs by $100,000.

Shortly thereafter, BLyn sued appellants. BLyn alleged claims for breach of contract, common-law fraud, fraud by nondisclosure and fraudulent inducement, negligent misrepresentation, and accounting. On July 18, 2008, appellants filed a special appearance and an original answer. Appellants did not request the special appearance be set for a hearing. On February 9, 2009, all parties filed a joint motion for continuance. On June 5, 2009, all parties filed a second joint motion for continuance. On July 13, 2009, appellants noticed a special appearance hearing for the following month. By the hearing date, BLyn had filed a third amended petition. BLyn alleged appellants, while in Houston, had made false representations and had concealed or failed to disclose facts regarding the cost of the work and use of the workers.

In response to appellants' special appearance, BLyn argued (1) appellants had waived the special appearance by waiting over a year to set it for a hearing and requesting affirmative relief from the court in the interim and (2) the court had specific jurisdiction over appellants because appellants committed a tort in Texas. After hearing argument and admitting the parties' documentary evidence, the court denied the special appearance by written order signed September 9, 2009. Although requested by Horizon, the trial court did not file findings of facts and conclusions of law.[2] This appeal followed.

## II. STANDARD OF REVIEW

In their sole issue on appeal, appellants argue the trial court erred in denying their special appearance. The existence of personal jurisdiction is a question of law. *BMC Software Belg., N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002). On appeal, we consider all of the evidence before the trial court on the question of jurisdiction. *Fish v. Tandy Corp.,* 948

---

1. The contract is not part of the appellate record. In response to an order from this court, the district clerk for Galveston County certified that the contract, which purportedly was attached as Exhibit A to Defendant's Special Appearance Challenging Personal Jurisdiction and Original Answer, had not been actually attached to that pleading. Counsel for Horizon at oral argument admitted that the contract was never filed.

2. There is nothing in the record to indicate Horizon filed a "Notice of Past Due Findings of Fact and Conclusions of Law." *See* TEX.R. CIV. P. 297. On appeal Horizon does not challenge the trial court's failure to file findings of fact and conclusions of law.

S.W.2d 886, 891 (Tex.App.Fort Worth 1997, writ denied).

When a trial court does not issue findings of fact and conclusions of law with its special appearance ruling, all facts necessary to support the judgment and supported by the evidence are implied. *BMC Software*, 83 S.W.3d at 795. Absent a complete record on appeal, we will presume the omitted items supported the trial court's judgment. *See Bennett v. Cochran*, 96 S.W.3d 227, 230 (Tex.2002) (per curiam) (approving general rule that, absent a complete record on appeal, court of appeals must presume omitted items support trial court's judgment).

## III. WAIVER

At trial, BLyn asserted appellants waived their special appearance because they did not set the hearing on the special appearance for approximately a year, during which they filed two joint motions for continuance. Appellants contend that the trial court's denial of their special appearance cannot be affirmed on such grounds. We agree.

### A. Delay in Setting a Hearing does not Waive a Special Appearance.

BLyn has not cited any authority for the proposition that a nonresident defendant waives its special appearance by waiting approximately a year before setting a hearing on it, nor have we found any support for this assertion. *See Peninsula Asset Mgmt. (Cayman) Ltd. v. Hankook Tire Co., Ltd.*, No. 02–04–00254–CV, 2006 WL 1030185, at *4 (Tex.App.-Fort Worth, Apr. 20, 2006, pet. denied) (mem. op.) (holding appellee did not waive special ap-

pearance by delaying hearing over eighteen months); *cf. Michiana Easy Livin', Country, Inc. v. Holten*, 168 S.W.3d 777, 793 (Tex.2005) (observing, in context of deciding whether forum-selection clause was waived, special appearance was decided two years after filing but record reflected little activity other than special appearance). The rule requires only that jurisdictional challenges be heard and determined "before any other plea or pleading may be heard." *See* TEX.R. CIV. P. 120a(2). Delay in setting the hearing did not waive the special appearance.

### B. Joint Motions for Continuance do not Waive a Special Appearance.

BLyn contends the defendants waived their special appearance by filing two joint motions for continuance before setting the special appearance for a hearing. According to BLyn, a motion for continuance is a request for affirmative relief inconsistent with the defendants' assertion the district court lacks jurisdiction. We disagree.

A party enters a general appearance when it (1) invokes the judgment of the court on any question other than the court's jurisdiction, (2) recognizes by its acts that an action is properly pending, or (3) seeks affirmative action from the court. *Exito Elecs. Co., Ltd. v. Trejo*, 142 S.W.3d 302, 304 (Tex.2004) (per curiam); *Dawson–Austin v. Austin*, 968 S.W.2d 319, 322 (Tex.1998). (per curiam). The rule governing special appearances, however, specifically provides for continuances. *See* Tex.R. Civ. P. 120a(3).[3]

Citing *Dawson–Austin* and *Exito Electronics*, BLyn contends a defendant may

---

**3.** The rule provides in pertinent part:
 Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court

may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.
 TEX.R. CIV. P. 120a(3).

"obtain some limited affirmative relief from the trial court concerning matters relating to the special appearance without waiving the special appearance," but the defendant recognizes that a lawsuit is properly pending if it requests a continuance "of the entire case." *Dawson–Austin,* however, stands for the opposite of this proposition. In that case, the Texas Supreme Court held a nonresident defendant did not waive her special appearance by filing a motion for continuance in which she "asked the court to defer action on all matters." *Dawson–Austin,* 968 S.W.2d at 323.

We decline to hold that a joint motion for continuance of the entire case waives a special appearance.

## IV. Personal Jurisdiction

### A. The Long–Arm Statute Reaches as far as Federal Due Process Allows.

■■■■ Texas courts may assert personal jurisdiction over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees. *Moki Mac River Expeditions v. Drugg,* 221 S.W.3d 569, 574 (Tex.2007). The long-arm statute provides in relevant part:

> In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:
>
> (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;
>
> (2) commits a tort in whole or in part in this state. . . .

TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 2008).

■■■■ The "doing business" language "allows the statute to reach as far as the federal constitutional requirements of due process will allow.'" *Moki Mac,* 221 S.W.3d at 575 (quoting *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex. 1991)). Therefore, when a jurisdictional assertion accords with federal due process standards, the Texas long-arm statute requirements are also satisfied. *Id.*

As set forth above, BLyn alleged appellants committed the torts of common-law fraud, fraud by nondisclosure and fraudulent inducement, and negligent misrepresentation in Houston. Thus, BLyn alleged appellants did business in the state by committing a tort in the state, so as to bring them under the long-arm statute. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 17.042; *Tempest Broadcasting Corp. v. Imlay,* 150 S.W.3d 861, 871 (Tex.App.Houston [14th Dist.] 2004, no pet.).

### B. Due Process Requires Purposeful Availment.

■■■■ State statutory and federal due-process requirements are satisfied if (a) the nonresident has minimum contacts with Texas, and (b) exercise of personal jurisdiction over the nonresident does not offend traditional notions of fair play and substantial justice. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). Minimum contacts suffice for personal jurisdiction when the nonresident purposefully avails itself of the privilege of conducting activities within the forum state, and thus invokes the benefits and protections of its laws. *Moki Mac,* 221 S.W.3d at 575.

■■■■ The "purposeful availment" inquiry has three parts. *Id.* First, only the defendant's contacts with the forum are

relevant. *Id.* Second, the contacts on which jurisdiction depends must be purposeful, rather than random, fortuitous, or attenuated. *Id.* Third, "the 'defendant must seek some benefit, advantage or profit by "availing" itself of the jurisdiction.'" *Id.* (quoting *Michiana,* 168 S.W.3d at 785).

The Texas contacts on which BLyn relies are the October 5, 2006 and March 4, 2008 meetings in Houston, which Short and Forrest attended, and telephone calls from Horizon to a number associated with James McCord. These "contacts" are equally relevant to Short, Forrest, and Horizon.

It is undisputed Short is the president and general manager of Horizon. Appellants nevertheless argue, "Short's activities for Horizon are not based on a principal/agent relationship." Appellants then assert, "Unlike the voluntary establishment of an agency relationship, corporations may only act through individuals." Appellants provide no authority for this assertion and do not explain how it supports their argument that Short was not acting as an agent for Horizon.

It is also undisputed that Forrest is a project manager for Horizon and director of operations for Crimson. Although they have more than once represented that Crimson is an unincorporated division of Horizon, appellants argue Crimson's activities may not be attributed to Horizon. We disagree. *See W. Beef, Inc. v. Compton Inv. Co.,* 611 F.2d 587, 591 (5th Cir.1980). ("A division of a corporation is not a separate legal entity but is the corporation itself.").

Despite appellants' contentions to the contrary, we attribute Short's and Forrest's actions to Horizon. *See Holloway v.*

*Skinner,* 898 S.W.2d 793, 795 (Tex.1995) ("As a general rule, the actions of a corporate agent on behalf of the corporation are deemed the corporation's acts."); *Huynh v. Nguyen,* 180 S.W.3d 608, 620 (Tex.App.-Houston [14th Dist.] 2005, no pet.) ("The Texas contacts of agents or employees are attributable to their nonresident principals.").

Appellants admit Short and Forrest attended the meetings in Texas and made telephone calls "in" Texas. Appellants, however, contend those two trips and telephone calls lack the significance BLyn attributes to them because they are isolated, incidental, and attenuated contacts.

"[T]he minimum-contacts analysis is focused on the quality and nature of the defendant's contacts, rather than their number." *Retamco Operating, Inc. v. Republic Drilling Co.,* 278 S.W.3d 333, 339 (Tex.2009). "Even a single act can support jurisdiction so long as it is substantial." *Tempest Broadcasting,* 150 S.W.3d at 875.

According to the special appearance evidence, the purpose of the October 5, 2006 meeting was "to discuss documentation and financing for the boat, draw schedule for the bank, valuations of the boat as the refit progresses, final plans for the interior and exterior, legal issues, and other topics that may arise during the meeting." Thus, although the parties had executed the written contract before the meeting, the trial court could reasonably have found that critical aspects of the refurbishment plans remained to be, and were, determined at the October 2006 meeting. The court could further have found the meeting constituted a significant part of an ongoing relationship among the parties.[4] Addition-

---

4. According to the third amended petition, the relationship began at least as early as April 2006, while the yacht was still in Texas, when Short and Forrest allegedly represented to BLyn that Horizon could refurbish and outfit the yacht for an estimated but set price.

ally, given the purpose of the October 2006 meeting and the attendance of a representative of the bank, the court could have found the representations Short and Forrest made at that meeting were a determinative factor in BLyn's obtaining final funding for the project.

From the preceding findings, the trial court then could have concluded the October 5, 2006 meeting alone was "substantial." From such findings, the trial court could also have concluded it was foreseeable that any disputes deriving from that meeting might be heard by a Texas court. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (stating foreseeability critical to due process analysis is that defendant's conduct and connection with forum state are such he should reasonably anticipate being haled into court there).

The court could have further concluded the two Houston meetings were purposeful, and not random or fortuitous. James McCord did not compel Short and Forrest to attend the October 2006 meeting in Houston. Rather, in his email, McCord stated he wanted to make sure all parties were aware of the meeting and requested the email recipients to let him know whether they could attend. The fact Short and Forrest made the alleged misrepresentations while physically present in Houston is significant. *See Stein v. Deason,* 165 S.W.3d 406, 415 (Tex.App.-Dallas 2005, no pet.).

■ Appellants nevertheless argue, "The contract performance and its choice of law provisions are significant." The contract itself is not part of the record. We therefore do not know the precise parameters of the choice-of-law provision or whether the contract contained an express understanding the parties would submit disputes to Alabama courts.[5] Instead, we must assume the content of the contract would support the trial court's judgment. *See Bennett,* 96 S.W.3d at 230.

Finally, given what we can infer from the record before this court, we conclude the trial court could reasonably have found appellants sought to profit from making representations about the cost of labor and materials to refurbish the yacht.

**C. Liability Must "Arise Out Of" or be "Related To" the Contacts.**

■ Specific jurisdiction is established if the defendant's alleged liability arises out of or is related to an activity conducted within the forum. *Helicopteros,* 466 U.S. at 414 n. 8, 104 S.Ct. at 1872 n. 8. The relevant test is whether a substantial connection exits between appellants' contacts with Texas and the operative facts of the litigation. *See Moki Mac,* 221 S.W.3d at 576, 585.

■ BLyn alleged common-law fraud, fraud by nondisclosure and fraudulent inducement, and negligent-misrepresentation. The elements of fraud are (1) a material representation was made, (2) the

There is also evidence of multiple telephone calls in 2006 and 2007 from Horizon to a number associated with James McCord. This case therefore does not involve a one one-time, unsolicited, fortuitous transaction between a nonresident seller and a Texas resident such as occurred in *Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d at 781.

**5.** A state choice-of-law provision alone does not mean the parties voluntarily agreed to

submit to the jurisdiction of that state. *See Alenia Spazio S.p.A. v. Reid,* 130 S.W.3d 201, 219 (Tex.App.-Houston [14th Dist.] 2003, pet. denied) ("By agreeing to a Texas choice-of-law provision, a party does not avail itself of any protection from Texas courts or voluntarily submit to personal jurisdiction in Texas courts, absent an express understanding to that effect.").

representation was false, (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion, (4) the speaker made the representation with the intent that the other party should act upon it, (5) the party acted in reliance on the representation, and (6) the party thereby suffered injury. *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex.2009) (per curiam). The elements of fraud by nondisclosure are (1) the defendant failed to disclose facts to the plaintiff, (2) the defendant had a duty to disclose those facts, (3) the facts were material, (4) the defendant knew the plaintiff was ignorant of the facts and the plaintiff did not have an equal opportunity to discover the facts, (5) the defendant was deliberately silent when it had a duty to speak, (6) by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting, (7) the plaintiff relied on the defendant's nondisclosure, and (8) the plaintiff was injured as a result of acting without that knowledge. *7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys.*, 245 S.W.3d 488, 507 n. 27 (Tex. App.-Houston [14th Dist.] 2007, pet. denied). The elements of negligent misrepresentation are (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest, (2) the defendant supplies "false information" for the guidance of others in their business, (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information, and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 686 n. 24 (Tex.2002).

BLyn's common-law-fraud, fraud-by-nondisclosure-and-fraudulent-inducement, and negligent-misrepresentation claims therefore rest on what Short and Forrest communicated or failed to communicate at the October 5, 2006 and March 4, 2008 meetings in Houston. These claims require that BLyn relied on what was or was not communicated and that BLyn suffered injury as a result. Thus, the operative facts for these claims are not events occurring at the shipyard in Alabama, but events occurring in Houston, Texas.

Accordingly, the present case is distinguishable from *Moki Mac*, in which the alleged misrepresentations were tangential to the plaintiffs' core negligence claims. *See Glencoe Capital Partners II, L.P. v. Gernsbacher*, 269 S.W.3d 157, 167 (Tex. App.-Fort Worth 2008, no pet.) (distinguishing *Moki Mac*).[6] Here, the alleged misrepresentations are the core of BLyn's tort claims and arguably of its breach-of-contract claims.

---

**6.** Appellants contend this case is similar to *Marathon Oil Co. v. A.G. Ruhrgas*, in which the appellate court held the presence of a German defendant at three meetings in Houston, together with correspondence and phone calls to Texas, were insufficient to establish minimum contacts with Texas. 182 F.3d 291, 295 (5th Cir.1999). The court so held, however, because the record was "devoid of evidence that Ruhrgas made false statements at the meetings or that the alleged tortious conduct was aimed at activities in Texas." *Id.* The court further observed, "Ruhrgas could not reasonably have expected to be brought into Texas courts because of its presence at the meetings inasmuch as the meetings and related communications dealt with the Heimdal Agreement, a contract governed by Norwegian law and providing specifically for Swedish arbitration." *Id.* As discussed above, the present case involves allegations appellants made false statements in the Texas meetings; and, although the parties agree the contract which was the subject of the Houston meetings contained an Alabama choice-of-law provision, there is no indication the contract also included a forum-selection clause. *Marathon Oil* is therefore distinguishable.

For the preceding reasons we conclude appellants have minimum contacts with Texas to satisfy due process requirements.

**D. Exercise of Personal Jurisdiction Must Comport with Traditional Notions of Fair Play and Substantial Justice.**

If the nonresident defendant has minimum contacts with the forum state, we must then determine whether exercise of personal jurisdiction over the nonresident offends traditional notions of fair play and substantial justice. *See Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184. In making this determination, we consider (1) the burden on the defendant, (2) the interests of the forum state in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interests of the several states in furthering fundamental substantive social policies. *Nogle & Black Aviation, Inc. v. Faveretto*, 290 S.W.3d 277, 285 (Tex. App.-Houston [14th Dist.] 2009, no pet.). When the nonresident defendant has purposefully established minimum contacts with the forum state, only in rare instances will the exercise of jurisdiction not comport with fair play and substantial justice. *Angelou v. African Overseas Union*, 33 S.W.3d 269, 281 (Tex.App.-Houston [14th Dist.] 2000, no pet.) (citing *Guardian Royal Exch.*, 815 S.W.2d at 231).

In a special appearance, a defendant bears the burden of presenting "a compelling case that the presence of some consideration would render jurisdiction un-reasonable.'" *Guardian Royal Exch.*, 815 S.W.2d at 231 (quoting *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2185). Despite this burden, appellants' argument in its brief is negligible. After listing the factors a court is to consider, appellants argue only:

> In this case the interest of Texas is minimal, especially since the parties agreed Alabama law would apply. The two meetings in Texas are isolated and fortuitous, and could have been just as easily held in Alabama. Texas has no special interest in granting relief to a limited liability company on a cause of action arising under another state's law for contractual conduct in another state.

As discussed above, we have concluded (1) the two meetings in Texas were not isolated and fortuitous and (2) the choice-of-law provision is not determinative of jurisdiction. Finally, the state of Texas has an obvious interest in providing a forum for resolving disputes involving its citizens, particularly disputes in which the defendant allegedly committed a tort in whole or in part in Texas. *D.H. Blair Inv. Banking Corp. v. Reardon*, 97 S.W.3d 269, 278 (Tex.App.-Houston [14th Dist.] 2002, pet. dism'd w.o.j.).[7]

## V. CONCLUSION

Having concluded the Texas court has personal jurisdiction over appellants, we affirm the order of the trial court denying appellants' special appearance.

---

**7.** In the trial court, appellants alleged (1) many relevant books and records are located in Alabama; (2) key witnesses, including those not parties to the case, are located outside Texas and many in Alabama; (3) all physical work by these defendants was done in Alabama; (4) the yacht is currently located in Alabama; and (5) a proceeding in rem against the yacht is pending in federal district court in Alabama. In this court, appellants have not further pursed these allegations as support for an argument that the exercise of jurisdiction in Texas would offend traditional notions of fair play and substantial justice.