Affirmed and Opinion filed April 5, 2011.

 

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-10-00825-CV

___________________

 

Max Protetch, Inc., Appellant

 

V.

 

John A. Herrin, Appellee



 



 

On
Appeal from the 125th District Court

Harris County,
Texas



Trial Court Cause No. 2009-29153

 



 

 

 OPINION

            In this accelerated interlocutory appeal, appellant
Max Protetch, Inc. (Protetch) challenges the trial court’s denial of its special
appearance.  Concluding the court has personal jurisdiction over Protetch, we
affirm.

Background

            Appellee
John A. Herrin is a resident of Houston.  Protetch is a New York corporation
authorized to fabricate, promote, price, and sell limited editions of the works
of deceased artist Scott Burton.  Max Protetch (Mr. Protetch) is the president
of Protetch.  According to Mr. Protetch, Protetch has eight full-time and
part-time employees, all of whom work in New York.

            In
2005, after researching Burton’s furniture designs and personally inspecting
pieces in galleries in San Antonio, Dallas, and Protetch’s gallery in New York
City, Herrin contracted to purchase a four-hundred pound stainless-steel Scott
Burton table from Protetch.  All negotiations leading to the contract occurred
in New York, and sale of the table occurred there.  Herrin assumed
responsibility for shipping the piece from New York to Texas, with the sale
expressly “FOB New York.”[1]

            Herrin
made three equal payments, two of which he drafted in Houston and sent to
Protetch in New York.  According to Herrin, before he received the table,
Protetch employees regularly communicated with him.  

            In
May 2007, the table was delivered to Herrin’s residence in Houston.  Herrin
observed that the table was damaged and did not conform to the agreed
specifications, particularly with regard to the color of the finish.  According
to Herrin, he immediately informed Protetch the table was non-conforming; and,
thereafter, Protetch employees repeatedly contacted him regarding the table.

            In
July 2007, Mr. Protetch traveled to Houston to participate in a panel
discussion at the Museum of Fine Arts.  While in Houston, Mr. Protetch
inspected the table at Herrin’s home.  It is not clear which party initiated
the visit.

            According
to Herrin, Mr. Protetch acknowledged in Herrin’s home that the table was
damaged, and Herrin further told Mr. Protetch he would not accept the table
with its current finish.  Mr. Protetch told Herrin he would have the table
repaired and it could also be refinished.

            The
table was returned to New York, allegedly at Herrin’s expense, but it could not
be repaired or refinished.[2] 
Protetch did not return the table to Herrin, but, according to Herrin, Mr.
Protetch indicated the company would construct another table conforming to the
agreed specifications.  When Herrin received photographs of the second table,
he concluded the second table also did not meet the specifications.  After
communicating with Protetch employees, Herrin believed Protetch would not
construct and deliver a conforming table, and he requested that Protetch refund
his money.  According to Herrin, Protetch then ceased communication with him. 
Protetch kept both tables and Herrin’s money.

On May 8, 2009, Herrin
sued Protetch, alleging claims for breach of contract and violation of the
Texas Theft Liability Act.[3] 
Herrin alleged, “Max Protetch, Inc. is a New York Corporation that does
business in the State of Texas, but does not maintain a regular place of
business or a designated agent for service of process, as required by Texas
law.”

Protetch filed a verified
special appearance “to the entire proceeding” and an answer subject thereto. 
Protetch alleged it is a corporation organized under the laws of New York, with
its principal place of business in Manhattan, New York.  Protetch argued the
court had neither general nor specific jurisdiction over it.  In a subsequently
filed affidavit, Mr. Protetch averred, “All negotiations occurred in New York,
and the sale of the piece, for $65,000.00, occurred in New York.  Plaintiff
assumed responsibility for shipping the piece from New York to Texas, and the
sale was expressly ‘FOB New York.’” 

            On
August 16, 2010, Herrin filed a second amended petition, adding a claim for
fraud and the following jurisdictional facts:  (1) Mr. Protetch met with Herrin
at Herrin’s home in Houston and made representations which resulted in the
table’s return to New York; and (2) Max Protetch’s employees regularly
contacted Herrin in Houston about Herrin’s dissatisfaction with both tables,
but abruptly ceased contact when Herrin demanded a refund.  On the same date,
the court held a non-evidentiary hearing, during which Herrin acknowledged he
was not asserting general jurisdiction.  The court denied Protetch’s special
appearance, and this interlocutory appeal ensued.

Analysis

            In
its sole issue, Protetch argues the trial court erred in denying its special
appearance because Texas does not have specific jurisdiction over Protetch.

Burden
of Proof and Standard of Review

            The
plaintiff bears the initial burden of pleading sufficient allegations to bring
a nonresident within the provisions of the long-arm statute.  BMC Software
Belg., N.V. v. Marchand, 83 S.W.3d 789, 793 (Tex. 2002).  The nonresident
defendant then bears the burden of proof to negate all bases of personal
jurisdiction asserted by the plaintiff.  Kelly v. Gen. Interior Constr. Inc.,
301 S.W.3d 653, 658 (Tex.
2010).[4]

            If
the plaintiff does not plead sufficient jurisdictional facts, the defendant
meets its burden to negate jurisdiction by proving it is not a Texas resident. 
Id. at 658–59.  In determining whether the plaintiff satisfied its
burden, a court may consider the plaintiff’s pleadings as well as its response
to the defendant’s special appearance.  See Tex. R. Civ. Pro. 120a(3); Touradji
v. Beach Capital P’ship, L.P., 316 S.W.3d 15, 23 (Tex. App.—Houston [1st
Dist.] 2010, no pet.).  In
conducting our review, we accept as true the allegations in the petition.  Pulmosan
Safety Equip. Corp. v. Lamb, 273 S.W.3d 829, 835 (Tex. App.—Houston [14th
Dist.] 2008, pet. denied).

The existence of personal jurisdiction is a question of law.  BMC
Software, 83 S.W.3d at 794.  On appeal, we consider all of the evidence
before the trial court on the question of jurisdiction.  Horizon
Shipbuilding, Inc. v. BLyn II Holding, LLC, 324 S.W.3d 840, 845 (Tex.
App.—Houston [14th Dist.] 2010, no pet.)

When, as in the present case, a trial court does not issue findings of
fact and conclusions of law with its special appearance ruling, we infer “all
facts necessary to support the judgment and supported by the evidence.”  BMC
Software, 83 S.W.3d at 795; Horizon, 324 S.W.3d at 846.  These
inferred findings are not conclusive, however, and may be challenged for legal
and factual sufficiency when this court has a complete record on appeal.  BMC
Software, 83 S.W.3d at 795; Cerbone v. Farb, 225 S.W.3d 764, 767
(Tex. App.—Houston [14th Dist.] 2007, no pet.).

Legal
Principles Relevant to Personal Jurisdiction

            Texas
courts may assert personal jurisdiction over a nonresident if (1) the Texas
long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise
of jurisdiction is consistent with federal and state constitutional due-process
guarantees.  Moki Mac River Expeditions v. Drugg, 221 S.W.3d 569, 574
(Tex. 2007); Horizon, 324 S.W.3d at 847.  The long-arm statute provides
in relevant part:

In addition
to other acts that may constitute doing business, a nonresident does business
in this state if the nonresident:

(1)
contracts by mail or otherwise with a Texas resident and either party is to
perform the contract in whole or in part in this state; [or]

                        (2)
commits a tort in whole or in part in this state . . . .

Tex. Civ.
Prac. & Rem. Code § 17.042.

The “doing business” language “allows the statute to ‘reach as far as the
federal constitutional requirements of due process will allow.’”  Moki Mac,
221 S.W.3d at 575 (quoting Guardian Royal Exch. Assurance, Ltd. v. English
China Clays, P.L.C., 815 S.W.2d 223, 226 (Tex. 1991)).  Therefore, when a
jurisdictional assertion meets federal due process standards, the Texas
long-arm statute requirements are also satisfied.  Id.; Horizon,
324 S.W.3d at 847.

State statutory and federal due-process requirements are satisfied if (a)
the nonresident has minimum contacts with Texas, and (b) exercise of personal
jurisdiction over the nonresident does not offend traditional notions of fair
play and substantial justice.  Helicopteros Nacionales de Colombia, S.A. v.
Hall, 466 U.S. 408, 414, 104 S. Ct.
1868, 1872 (1984) (citing Int’l Shoe Co. v. Washington, 326 U.S. 310,
316, 66 S. Ct. 154, 158 (1945)).  Minimum contacts suffice for personal
jurisdiction when the non-resident purposefully avails itself of the privilege
of conducting activities within the forum state and thus invokes the benefits
and protections of its laws.  Moki Mac, 221 S.W.3d at 575; Horizon,
324 S.W.3d at 847.

The “purposeful availment” inquiry has three parts.  Moki Mac, 221
S.W.3d at 575; Horizon, 324 S.W.3d at 847.  First, only the defendant’s
contacts with the forum are relevant.  Moki Mac, 221 S.W.3d at 575; Horizon,
324 S.W.3d at 847–48.  Second, the contacts on which jurisdiction depends must
be purposeful, rather than random, fortuitous, or attenuated.  Moki Mac,
221 S.W.3d at 575; Horizon, 324 S.W.3d at 848.  Third, “the ‘defendant
must seek some benefit, advantage or profit by “availing” itself of the
jurisdiction.’”  Moki Mac, 221 S.W.3d at 575 (quoting Michiana Easy
Livin’ Country, Inc. v. Holten, 168 S.W.3d 777, 785 (Tex. 2005)).

When, as in this case, the plaintiff alleges only specific jurisdiction,
we focus on the relationship among the defendant, the forum, and the
litigation.  Id. at 575–76.  “Specific jurisdiction is established if
the defendant’s alleged liability ‘aris[es] out of or [is] related to’ an
activity conducted within the forum.”  Id. at 576 (quoting Helicopteros,
466 U.S. at 414, n.8, 104 S. Ct. at 1872 n.8).  The relevant test for
relatedness is whether a substantial connection exits between the defendant’s
forum contacts and the operative facts of the litigation.  Id. at 585; Horizon,
324 S.W.3d at 849.

If the nonresident
defendant has minimum contacts with the forum state, we must then determine
whether exercise of personal jurisdiction over the nonresident offends
traditional notions of fair play and substantial justice.  Horizon, 324
S.W.3d at 851.  In making this determination, we consider (1) the burden on the
defendant, (2) the interests of the forum state in adjudicating the dispute,
(3) the plaintiff’s interest in obtaining convenient and effective relief, (4)
the interstate judicial system’s interest in obtaining the most efficient
resolution of controversies, and (5) the shared interests of the several states
in furthering fundamental substantive social policies.  Id.  When the
nonresident defendant has purposefully established minimum contacts with the
forum state, only in rare instances will the exercise of jurisdiction not
comport with fair play and substantial justice.  Id.

Application to Jurisdictional Facts

            The Long-arm Statute

            As set forth above, Herrin, a
Texas resident, alleged in part that (1) he and Protetch entered into a
contract which involved delivery of a table in Texas and (2) Protetch’s
president made misrepresentations to him while in Texas.  Thus, Herrin alleged
Protetch did business in the state so as to bring it under Texas Civil Practice
and Remedies Code section 17.042.[5] 
See Tex. Civ. Prac. & Rem. Code § 17.042.  We therefore consider
whether exercise of jurisdiction over Protetch is consistent with due process
guarantees.

            Due Process — Minimum Contacts

            To determine whether the pleadings
and jurisdictional facts establish the minimum contacts component of federal
due process, we consider whether those facts show (1) Protetch purposefully
availed itself of the privilege of operating in Texas and (2) Protetch’s alleged liability arises out of, or is related to,
an activity it conducted within Texas.  See Moki Mac, 221 S.W.3d at
575–76.  

            Purposeful
Availment

            It
is essential there be some act by which the defendant purposefully availed
itself of the privilege of conducting activities within the forum state such
that the defendant can reasonably foresee being haled into court there.  See
Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 105 S. Ct. 2174, 2183
(1985); Michiana, 168 S.W.3d at 784.   As set forth above, three factors
are relevant to the purposeful availment inquiry. 

            Protetch’s
contacts.  First, only Protetch’s Texas contacts, not those of Herrin or a
third party, are relevant to the analysis.  Moki Mac, 221 S.W.3d at 575;
Horizon, 324 S.W.3d at 847–48.  In his pleadings and response to
Protetch’s special appearance, Herrin alleged the following Texas contacts by
Protetch:

·       
before delivery of the table,
Protetch’s employees regularly communicated with Herrin in Houston;

·       
Protetch delivered the table to
Herrin in Harris County;

·       
Protetch’s employees regularly
contacted Herrin in Houston regarding Herrin’s dissatisfaction with the
original table; [6]

·       
Mr. Protetch, on behalf of
Protetch, met with Herrin at Herrin’s home in Houston, during which visit, Mr.
Protetch misrepresented that the table could be repaired and refinished;

·       
after the table was returned to
New York and it was clear the table could not be refinished, Mr. Protetch
represented to Herrin he would make a second, conforming, table;

·       
Protetch sent photographs of the
second table to Herrin in Houston; and

·       
Protetch’s employees contacted
Herrin in Houston regarding the second table.

            Merely contracting with a resident of the forum
state or engaging in communications during performance of the contract generally
is insufficient to subject a nonresident to the forum’s jurisdiction.  See Olympia
Capital Assocs., L.P. v. Jackson, 247 S.W.3d 399, 417 (Tex. App.—Dallas
2008, no pet.); Credit Commercial de France, S.A. v. Morales, 195 S.W.3d
209, 220–21 (Tex. App.—San Antonio 2006, pet. denied).  In the present case,
however, Herrin not only alleged a contract to be performed in part in Texas,
but also regular communication between Protetch personnel and Herrin, including
a face-to-face meeting in Houston during which Mr. Protetch allegedly made
misrepresentations inherently related to the contract and which could support a
separate cause of action in tort.

            Purposeful contacts.  The second
part of the purposeful-availment analysis requires that the contacts on which
jurisdiction depends must be purposeful, rather than random, fortuitous, or
attenuated.  Moki Mac, 221 S.W.3d at 575; Horizon, 324 S.W.3d at
848.  As discussed above, Herrin alleges regular communication with Protetch
employees.  Thus, the present case differs from Michiana, in which the
alleged tort occurred in a single telephone conversation initiated by a Texas
resident.  See Michiana, 168 S.W.3d at 791–92.

            Herrin also relies on Mr. Protetch’s visit
to Houston and the alleged misrepresentations Herrin made during that visit.  In
his affidavit, Herrin averred, “Mr. Max Protetch . . . informed me that he
would be traveling to Houston in July 2007 and that he wanted to inspect the
table prior to taking any further action.”  In contrast, Mr. Protetch averred
that, by the time of his 2007 visit, Herrin, “had already received the Scott
Burton table. He asked me to come to his location to view the Scott Burton
piece because he had complaints with that table.  Because I was in Houston for
the speaking engagement, I agreed to his request.”  Thus, the parties dispute
who initiated the contact in Houston.  Assuming (as would support the judgment)
that Mr. Protetch initiated the Houston contact, we hold that this meeting and
the representations allegedly made there were purposeful contacts.  See
Horizon, 324 S.W.3d at 848–49 (concluding two meetings in Houston were
purposeful when Texas resident did not compel foreign residents to attend and
representations foreign residents made in Houston could have concerned critical
aspects of contract previously executed); see also Alliance
Royalties, LLC v. Boothe, 329 S.W.3d 117, 126 (Tex. App.—Dallas 2010, no
pet.) (stating trial court could have concluded appellant had purposeful
contacts with Texas when transactions involved Texas real property, contracts
with Texas entities, travel to Texas, representations made in Texas, and
attempts at dispute resolution in Texas); GJP, Inc. v. Ghosh, 251 S.W.3d
854, 879 (Tex. App.—Austin 2008, no pet.) (observing that, although South
Dakota defendant’s previously-planned trip to Texas may have fortuitously
created a good opportunity to perform the subject sale of car in Texas,
defendant nevertheless acted purposefully in opting to do so).

            Although the telephone communications alone may not
amount to sufficient minimum contacts, see Michiana, 168 S.W.3d at 791
(“[C]hanges in technology have made reliance on phone calls obsolete as proof
of purposeful availment.”), the face-to-face meeting in Houston tips the
scales.  At that meeting, a purposeful contact on Texas soil, Mr. Protetch made
representations that form a substantial portion of the core of the litigation. 
Moreover, the meeting amounted to more than just allegedly committing a tort in
Texas.  See id. at 788–91 (discussing committing a tort in Texas
as basis for personal jurisdiction).  Mr. Protetch voluntarily came to Texas,
and while he was here he purposefully conducted business with a Texas resident.
 Because of Mr. Protetch’s actions, we believe Protetch crossed a bright line
and purposefully availed itself of the privilege of conducting business in
Texas.

            Benefit, advantage, or profit.  In
analyzing purposeful availment, we last consider whether Protetch sought a benefit,
advantage, or profit by availing itself of Texas.  See Moki Mac,
221 S.W.3d at 575; Michiana, 168 S.W.3d at 785 & n.32.  The trial
court could have found that Protetch sought to benefit in two regards.  First, by
virtue of the contract, it would, and allegedly did, receive payments totaling
$65,000 from Herrin.  Second, by virtue of the purported misrepresentations in
Houston and the subsequent refusal to return Herrin’s payment, Protetch now has
both the table and Herrin’s payment.

            For the preceding reasons, we conclude the
pleadings and evidence support the conclusion that Protetch purposefully
availed itself of the privilege of conducting activities in Texas.

            Substantial Connection to the Operative
Facts of the Litigation

            We further conclude there was evidence
Herrin’s claims arose out of, or were related to, Protetch’s business contacts with
Texas, i.e., that there was a substantial connection between Protetch’s business
contacts with Texas and the operative facts of the litigation.  See Moki Mac,
221 S.W.3d at 576, 585; see also Michiana, 168 S.W.3d at 791 (“Business
contacts are generally a matter of physical fact, while tort liability
(especially in misrepresentation cases) turns on what the parties thought,
said, or intended.  Far better that judges should limit their jurisdictional
decisions to the former rather than involving themselves in trying the latter.”). 
Herrin’s breach-of-contract claim arises out of delivery of a non-conforming
table in Houston and out of pre- and post-delivery communications from Protetch
to Herrin.  Herrin’s theft and fraud claims arise out of Mr. Protetch’s alleged
misrepresentations in Houston, which purportedly induced Herrin to return the
table to New York at his own expense.  Thus, Protetch’s communications in and
to Texas will form the core of the litigation.  See Glencoe Capital Partners
II, L.P. v. Gernsbacher, 269 S.W.3d 157, 167 (Tex. App.—Fort Worth 2008, no
pet.) (“Unlike the misrepresentations in Moki Mac, which were tangential
to the plaintiffs’ core negligence claim, Appellants’ misrepresentations in
this case are the core of Appellees’ claims.”).

            In sum, we conclude the pleadings and
evidence support the conclusion that Protetch established minimum contacts with
Texas.

            Due Process — Fair Play and
Substantial Justice

In a special appearance, a defendant must present “‘a
compelling case that the presence of some consideration would render
jurisdiction unreasonable.’”  Guardian Royal Exch., 815 S.W.2d at 231
(quoting Burger King, 471 U.S. at 477, 105 S. Ct. at 2185).  Protetch
argues, “It would be inefficient and burdensome to conduct discovery and a
trial in Texas when all the witnesses and evidence are far outside the state. .
. .  In contrast, Texas has no particular interest in the dispute between
[Herrin] and Protetch, as none of [Protetch’s] alleged conduct took place in
Texas, and as Texas law would not apply to an action between [Herrin] and
Protetch.”

According to Herrin, he communicated with only three
Protetch employees, including Mr. Protetch.  Herrin also alleged his wife was
actively involved in purchase of the table.  Thus, contrary to Protetch’s
assertion, the potential witnesses appear more or less evenly divided between
Texas and New York.[7]  Neither party suggests what physical evidence might
be necessary for trial.  Although the tables are obviously germane to the
issues, it is not clear that their physical presence is required.

Also contrary to Protetch’s assertion, alleged conduct
took place in Texas.  Additionally, Protetch provides no support for its
assertion that Texas law would not apply to an action between itself and Herrin
nor why application of New York law might be an obstacle for a Texas court. 
Finally, Texas has a manifest interest in providing its residents with a
convenient forum for redressing injuries that out-of-state actors inflict.  Glencoe,
269 S.W.3d at 168 (citing Burger King, 471 U.S. at 479–82, 105 S. Ct. at
2185–87).

As discussed above, Protetch purposefully
established minimum contacts with Texas.  We conclude the exercise of personal
jurisdiction over Protetch would not offend traditional notions of fair play
and substantial justice.  See id.

Conclusion

            For the preceding reasons, we overrule
Protetch’s sole issue.  We therefore affirm the trial court’s order denying
Protetch’s special appearance.

 

                                                                                    

                                                                        /s/        Martha
Hill Jamison

                                                                                    Justice

 

 

 

Panel
consists of Justices Brown, Boyce, and Jamison.

            

             









[1] Mr. Protetch sets forth
this fact in his affidavit.  The contract is not part of the appellate record. 
Shipment of the table “FOB New York” implies title to the table passed from
Protetch to Herrin in New York.  See Am. Type Culture Collection, Inc. v.
Coleman, 83 S.W.3d 801, 807 (Tex. 2002).





[2] At the special appearance
hearing, Herrin’s attorney stated it was Herrin who paid to have the table
returned to New York.





[3] See Tex. Civ.
Prac. & Rem. Code §§ 134.001–.005.  Herrin initially also sued the New York
Museum of Modern Art, but deleted the museum from his second amended petition.





[4] Protetch argues Herrin
has the burden of proof to establish the district court has jurisdiction over
it.  In support it cites Mesa Agriproducts, Inc. v. Olabi International,
S.A., a Federal Rule of Civil Procedure 12(b)(2) action in which the court
stated, “The burden rests on the plaintiff to establish that the court has
personal jurisdiction over a nonresident defendant who moves for dismissal.” 
No. H-07-1336, 2007 WL 2777773, at *2 (S.D. Tex. Sept. 21, 2007).  We are not
bound by the Mesa court’s statement regarding the burden of proof, and
to the extent it is inconsistent with Kelly, we decline to follow it. 
Moveover, the Mesa court continued, “Where, as here, the district court
does not hold an evidentiary hearing on the issue, the plaintiff meets this
burden by presenting a prima facie case that personal jurisdiction is
proper.”  Id.





[5] Protetch contends Herrin
is attempting to convert a contract claim into a tort claim in order to
“bootstrap” personal jurisdiction in Texas.  Protetch urges that the contract
is the sole source of the duty allegedly breached.  In support, Protetch relies
on Southwestern Bell Telephone Co. v. DeLanney, 809 S.W.2d 493 (Tex.
1991).

In DeLanney, the plaintiff alleged only claims
in negligence based on Bell’s failure to publish DeLanney’s real estate
advertisement in the Yellow Pages as promised.  Id. at 493.  The supreme
court, however, concluded Bell’s duty to publish the advertisement arose solely
from contract, not from tort, and reversed judgment for DeLanney.  Id.
at 494–95.

Here, Herrin alleged torts separate from Protetch’s
alleged failure to fulfill the terms of the contract.  Herrin’s fraud and theft
claims arise out of alleged misrepresentations that purportedly induced Herrin
to return the table to New York.  We decline to adopt Protetch’s argument.  See
Charles R. Weber Co., Inc. v. Back-Haul Bulk Carriers, Inc., No.
14-02-00240-CV, 2002 WL 31769418, at *2 (Tex. App.—Houston [14th Dist.] Dec.
12, 2002, no pet.) (not designated for publication) (rejecting appellant’s
argument that jurisdiction over it could not be based on alleged tort claims
because they all arose out of contract when alleged conduct—falsely
representing it had prepared a document which was the subject of the
contract—gave rise to potential liability independent of whether a contract
existed between the parties).





[6] There is nothing in the
record to indicate which party initiated the pre- and post-delivery
communications.  We will, however, infer that Protetch initiated at least some
of these communications.  See BMC Software Belg., N.V. v. Marchand,
83 S.W.3d 789, 795 (Tex. 2002) (“When a trial court does not issue findings of
fact and conclusions of law with its special appearance ruling, all facts
necessary to support the judgment and supported by the evidence are implied.”).





[7] At the hearing, Protetch
also referred to another potential witness, the manufacturer, in New York. 
Herrin points to his having observed Scott Burton’s work at museums in Dallas
and San Antonio, possible locations of additional witnesses.