# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
November 5, 2013

Lyle W. Cayce
Clerk

————————

No. 12-10993

————————

ARTHUR MASSEY; TERRI MASSEY,

Plaintiffs–Appellants,

versus

EMC MORTGAGE CORPORATION, Also Known as JP Morgan Chase;
JP MORGAN CHASE BANK, N.A.,

Defendants–Appellees.

————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:12-CV-154

————————————————

Before SMITH, PRADO, and ELROD, Circuit Judges.

PER CURIAM:[*]

Arthur and Terri Massey sued EMC Mortgage Corporation and JP Morgan Chase Bank, N.A. (jointly "EMC"), alleging various causes of action relat-

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-10993

ing to their attempts to secure modifications of their mortgage loan agreements. The district court granted EMC's motion to dismiss, and we affirm.

I.

In 2004, the Masseys purchased their house with a mortgage serviced by EMC. In 2008, they applied for a modification and were approved by EMC with a lowered monthly payment of $1786; they made their payments under those modified terms. In March 2009, Terri Massey again requested a lower monthly payment and sent requested documentation. The Masseys were denied a modification in August 2009 because their account was not sixty days past due.

That same month, EMC sent the Masseys a document stating, "You may qualify for a Home Affordable Modification Trial Period Plan." The document stated, "If you qualify under the federal government's Home Affordable Modification program ["HAMP"] and comply with the terms of the Trial Period Plan ["TPP"], we will modify your mortgage loan and you can avoid foreclosure." It cautioned, however, that depending on the income documentation provided, the monthly TPP payment might change, and the Masseys "may not qualify for this loan modification program." The document stated, "The Trial Payment Plan is the first step. Once we are able to confirm your income and eligibility for the program, we will finalize your modified loan." The TPP established three monthly trial period payments of $1,317.50 on the first loan and $111 on the second, to be due in September, October, and November 2009. The Masseys made the payments.

In November 2009, EMC wrote the Masseys to inform them that based on information obtained "in whole or in part" from a report from a consumer-reporting agency, it had determined they did not qualify for a loan modification because their hardship was "not of a permanent nature." In December

No. 12-10993

2009, EMC sent the Masseys two letters informing them of a default on the second loan and noting that they may be eligible for a loan modification. The first letter stated the default as $479.65, and the second as $331.94. In January 2010, EMC again wrote to the Masseys, referencing a "recent conversation" pursuant to which EMC had established a "repayment plan" for the first loan. The letter requested income-related information to determine their eligibility for a loan modification "once the repayment plan has been successfully completed." In response, the Masseys faxed a completed modification packet to EMC.

An EMC manager informed Arthur Massey by phone in February 2010 that a modified monthly payment of $1100 on the first loan was feasible, and the Masseys sent in requested additional paperwork. The next month, during another phone conversation, EMC told the Masseys to send additional financial information.

In April 2010, EMC sent a letter to the Masseys stating, "We are unable to offer you a Home Affordable Modification because your Loan with us is not a first lien mortgage." A little over a week later, Terri Massey spoke with an EMC employee, who stated that "the necessary documentation had been received and an appraisal had been done" and advised her to call back in two weeks. During that conversation, Massey stated she wanted to make a payment toward the first loan and to bring the second loan current, but the employee advised that if she could not pay the full payment on the first loan, she should not pay any amount at all because it would not be applied until a full payment was made. The employee stated the modification would be complete in thirty days and that the Masseys would be back on track with their loan.

Terri Massey spoke with EMC employees on two occasions in late May 2010. The first employee told her he "couldn't accept the amounts she was

trying to pay" and suggested she "contact the modification department during business hours." The second employee stated she was "not allowed to refuse a payment" and that Massey "should have never been told not to make a payment in April"; this second employee advised Massey that the modification was still pending and to call back weekly.

In June 2010, EMC sent the Masseys a letter stating that "we have not received all documents necessary to complete your request for a modification" of the first loan and that if they did not provide a "most recent quarterly or year-to-date profit/loss statement" by July 18, EMC would terminate the TPP. Later that month, during a telephone conversation, an EMC employee said that EMC was "still awaiting a modification" and that the first loan was "$11,000 (approximately) delinquent."

The Masseys faxed the profit/loss statement to EMC on July 12. On July 14, EMC confirmed receipt of the document but verbally informed Terri Massey that "all documents have now expired and new all [sic] documents are required" and that EMC needed "new documents every 90 days, but cannot guarantee that a modification would be completed within another 90 days." On July 19, EMC sent a letter to the Masseys stating that the TPP Offer for the first loan "has expired . . . because you did not provide us with the documents we requested."

Within a week, EMC sent the Masseys letters with terms of a proposed loan modification agreement with a monthly payment of $1,455.54, a reduced interest rate, and a large balloon payment. The Masseys decided not to agree to that modification because they could not afford the payment and were "doomed to fail." The Masseys "remain in a state of uncertainty and fear over the threatened foreclosure of their home." They do not allege that defendants have begun foreclosure proceedings.

No. 12-10993

## II.

We review a dismissal under Federal Rule of Civil Procedure 12(b)(6) de novo and may affirm on any basis supported by the record. *Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). "Because this case was resolved on motion to dismiss, the allegations in the complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true." *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 467 (5th Cir. 2006).

"A dismissal for failure to state fraud with particularity as required by Rule 9(b) is a dismissal on the pleadings for failure to state a claim, and is also reviewed de novo." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 206 (5th Cir. 2009) (citation omitted). To avoid dismissal under Rule 9(b), a complaint must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Id.* at 207 (citation and internal quotation marks omitted).

## III.

The Masseys appeal dismissal of five claims: violation of the Texas Fair Debt Collection Practices Act ("TFDCPA"), common-law fraud, statutory fraud, negligent misrepresentation, and unreasonable debt collection.[1]  We

---

[1] We do not address any alleged HAMP violations under a private right of action or third-party beneficiary theory because those claims were not brought in the district court. Likewise, we need not consider whether the TPP is a valid contract because the Masseys have not brought a breach-of-contract claim.  In addition, the Masseys do not brief their claim of fraud

(continued...)

examine each in turn.

## A.

On appeal, the Masseys allege only that EMC violated § 392.304(a)(8) of the Texas Finance Code,[2] which prohibits a debt collector from using "a fraudulent, deceptive, or misleading representation that . . . misrepresent[s] the character, extent, or amount of a consumer debt." To constitute a misrepresentation under this provision, the defendant must have made a "false or misleading assertion."[3] The Masseys cite the following facts in support of their TFDCPA claim: (1) EMC's August 2009 TPP offer stating that fulfillment of the letter's requirements would result in EMC's waiving "ALL unpaid late charges at the end of the trial period"; (2) representing the terms of the 2010 modification as being HAMP-compliant; (3) including a different cure amount in separate letters sent in December 2009; (4) representing to the Masseys that they were being considered for a HAMP modification; (5) stating a loan modification should be complete in thirty days; (6) requesting a specific document or threatening termination of the TPP, then stating that all documents had expired and were insufficient.

These facts do not constitute affirmative statements that misrepresent the character, extent, or amount of the debt. The Masseys have not pleaded facts sufficient to show that the August 2009 statement regarding waiver of

---

(...continued)

by misrepresentation, so they have waived that claim. *Brinkmann v. Dall. Cnty. Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987) ("We will not raise and discuss legal issues that [appellant] has failed to assert." (citation omitted)).

[2] The Masseys have waived consideration of their claims under §§ 392.301(a)(8), 392.303, and 392.304(a)(19) of the Texas Finance Code by failing to brief them on appeal. *Brinkmann*, 813 F.2d at 748.

[3] *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 632 (N.D. Tex. 2010) (citing *Reynolds v. Sw. Bell. Tel., L.P.*, No. 2-05-356-CV, 2006 WL 1791606, at *7 (Tex. App.—Fort Worth June 29, 2006, pet. denied)).

No. 12-10993

late fees was false or misleading because they have not alleged that they have been assessed late fees.  The varying default amounts in the two December 2009 letters were based on different default dates, and the accuracy of their amounts has not been disputed.  The remaining facts describe "[d]iscussions regarding loan modification or a trial payment plan," which "are not representations, or misrepresentations, of the amount or character of [a] debt."[4]

B.

Under Texas law, the elements of common-law fraud are "(1) that a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury." *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (citation omitted).  The district court held, and we agree, that plaintiffs' claim for fraud failed to meet the strictures of Federal Rule of Civil Procedure 9(b).  In their brief on appeal, the Masseys do not dispute this finding but argue that Rule 9(b)'s heightened pleading standard is "context-specific," citing *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 188 (5th Cir. 2009).

In *Grubbs*, we distinguished an allegation of common law fraud—which "demands the specifics of the false representation"—from fraud under the False Claims Act, which, on account of its remedial nature, is "not on the same plane [as common law fraud] in meeting the requirement of 'stat[ing] with particularity' the contents of the fraudulent misrepresentation." *Id.* at

---

[4] *Thomas v. EMC Mortg. Corp.*, 499 F. App'x 337, 343 (5th Cir. 2012) (alterations in original) (quoting *Watson v. Citimortgage, Inc.*, 4:10-CV-707, 2012 WL 381205, at \*7 (E.D. Tex. Feb. 3, 2012)).

No. 12-10993

188–89. The Masseys do not, however, similarly supply support that the context of the present claim of common-law fraud requires deviation from this court's generally applicable interpretation of Rule 9(b): "This Court interprets Rule 9(b) strictly, requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Herrmann Holdings Ltd. v. Lucent Techs., Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002) (citation and internal quotation marks omitted). Under this standard, and because the Masseys did not cure this deficiency after having been granted leave to amend their complaint to comply with the requirements of Rule 9, dismissal was appropriate. *See United States ex rel. Hebert v. Dizney*, 295 F. App'x 717, 724–25 (5th Cir. 2008).

## C.

"The elements of statutory fraud under section 27.01 of the Texas Business and Commerce Code are essentially identical to the elements of common law fraud except that section 27.01 does not require proof of knowledge or recklessness as a prerequisite to the recovery of actual damages." *Trinity Indus., Inc. v. Ashland, Inc.*, 53 S.W.3d 852, 867 (Tex. App.—Austin 2001, pet. denied). The district court correctly dismissed the Masseys' statutory-fraud claim because § 27.01 "applies only to fraud in real estate or stock transactions," *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 343 (5th Cir. 2008), and "[a] loan transaction, even if secured by land, is not considered to come under the statute," *id.* (quoting *Burleson State Bank v. Plunkett*, 27 S.W.3d 605, 611 (Tex. App.—Waco 2000, pet. denied).

## D.

To demonstrate a negligent misrepresentation claim under Texas law, a

plaintiff must establish each of the following: "(1) [T]he representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest, (2) the defendant supplies 'false information' for the guidance of others in their business, (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information, and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation." *Horizon Shipbuilding, Inc. v. BLyn II Holding, LLC*, 324 S.W.3d 840, 850 (Tex. App.—Hous. [14th Dist.] 2010, no pet.) (citation omitted).

EMC's statements that the Masseys might be eligible for loan modification do not qualify as negligent misrepresentations because, "under Texas law, promises of future action are not actionable as a negligent-misrepresentation tort."[5] The same analysis applies to the statement contained in the TPP packet and referenced in the Masseys' brief: "If you fulfill the terms of the trial period including, but not limited to, making the trial period payments, we will waive ALL unpaid late charges at the end of the trial period." *See De Franchesci*, 477 F. App'x at 205. The Masseys' brief also contrasts EMC's statement that plaintiffs were being denied a modification because they were not sixty days past due with their subsequent action in sending the Masseys HAMP loan-modification paperwork. The Masseys do not explain how those representations constitute false information or how any reliance on the original modification denial caused pecuniary harm. *See Horizon Shipbuilding*, 324 S.W.3d at 850.

---

[5] *De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 F. App'x 200, 205 (5th Cir. 2012) (citing *Scherer v. Angell*, 253 S.W.3d 777, 781 (Tex. App.–Amarillo 2007, no pet.)); *see also Edwards v. Ocwen Loan Servicing, LLC*, No. 9:10-CV-89, 2012 WL 844396, at *6 (E.D. Tex. Mar. 12, 2012) (holding that plaintiff did not state a viable claim for negligent representation because the alleged misrepresentation—the mortgage servicer would not foreclose on the property while plaintiff's loan modification application was pending—was a promise of future conduct).

No. 12-10993

E.

Unreasonable collection is an intentional tort under Texas common law. *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App.—Dall. 2008, no pet.). Although the elements are not clearly defined and may vary from case to case, "[o]ne of the more precise legal descriptions delineates the conduct giving rise to the tort as 'efforts that amount to a course of harassment that was wilful, wanton, malicious, and intended to inflict mental anguish and bodily harm.'" *Id.* (citation omitted).[6] The district court held, and we agree, that the Masseys have not alleged facts sufficient to constitute wilful, wanton, and malicious behavior.[7]

Because the Masseys' request for injunctive relief depends on the success of their other claims, we find that it was properly dismissed.[8] The judgment of dismissal is AFFIRMED.

---

[6] *See also Thomas*, 499 F. App'x at 341–42 (noting that unreasonable collection in Texas "is intended to deter 'outrageous collection techniques,' particularly those involving harassment or physical intimidation.") (footnote omitted).

[7] *See, e.g., Custer v. Wells Fargo Bank, N.A.*, No. A-12-CV-056 LY, 2013 WL 1926412, at *12 (W.D. Tex. Apr. 1, 2013) (stating that engaging in legal activities related to collecting a past due debt, including discussions regarding loan modification, does not constitute conduct required for a claim of unreasonable collection).

[8] *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002); *Marsh v. Wells Fargo Bank, N.A.*, 760 F. Supp. 2d 701, 708 (N.D. Tex. 2011) ("Under Texas law, a request for injunctive relief is not itself a cause of action but depends on an underlying cause of action.") (citation and internal quotation marks omitted).